Kathy P. **BINGHAM,** Plaintiff, Appellee, and Cross–Appellant,

v.

David P. **BINGHAM,** Defendant, Appellant, and Cross–Appellee.

No. 920508–CA.

Court of Appeals of Utah.

April 8, 1994.

Jon J. Bunderson, Brigham City, for appellant and cross-appellee.

David Paul White, Midvale, for appellee and cross-appellant.

Before ORME, Associate P.J., and GREENWOOD and RUSSON [1], JJ.

ORME, Associate Presiding Judge:

Defendant David P. Bingham appeals from a final judgment entering a decree of divorce, claiming that the trial court erred in the distribution of the parties' marital property and in the amounts awarded for alimony and child support. Plaintiff Kathy P. Bingham cross-appeals, challenging an aspect of the property distribution and the trial court's decision that each party would bear his or her own attorney fees. We affirm in part, reverse in part, and remand for a reassessment of certain awarded amounts.

## FACTS

Plaintiff and defendant were married for twenty-one years and are the parents of six minor children. During the marriage, plaintiff gave up teaching to remain home, raise the children, and maintain the household.

---

1. Judge Russon heard the arguments in this case and participated in its resolution prior to his

Defendant worked as a dairyman in his solely-owned corporation, Bingham Dairy, Inc. At trial, the parties basically agreed on the evidence concerning the dairy's receipts and that the dairy income and any personal income received by defendant should be totaled to calculate his gross income for purposes of establishing alimony and child support awards.

However, the parties disagreed on whether payments of principal made by the corporation on its outstanding loans and its cash purchases of assets should be deducted from the gross income of the corporation, as "necessary expenses" under Utah Code Ann. § 78-45-7.5(4)(a) (1992). Each party called an expert accountant to testify in his or her behalf. Plaintiff's expert testified that neither expense should be deducted, while defendant's expert opined that both should be deducted. Plaintiff's calculation resulted in an average gross monthly income of $7,328, while defendant's calculation was only $2,538. The trial court ruled that the cash spent to purchase assets was an allowable expense but that the principal payouts on loans were not. Accordingly, the trial court calculated defendant's average monthly gross income at $5,587.50, set child support in the amount of $1,431 per month, and awarded plaintiff alimony of $1,750 per month.

The trial court also awarded plaintiff the house free and clear of any debt. In addition, plaintiff was given half the equity in Bingham Dairy, which the court determined by subtracting the dairy's debts from its gross value. Plaintiff's half of the dairy's equity totaled $110,666, from which the court deducted $37,500, the value of defendant's half interest in the equity of the family home, for a total cash award to plaintiff of $73,166.

## STANDARD OF REVIEW

■ Trial courts have "considerable discretion in determining the financial interests of divorced parties." *Hall v. Hall,* 858 P.2d 1018, 1021 (Utah App.1993). *See also Jones v. Jones,* 700 P.2d 1072, 1074 (Utah 1985).

Accordingly, property and alimony awards "will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated." *Howell v. Howell,* 806 P.2d 1209, 1211 (Utah App.), *cert. denied,* 817 P.2d 327 (Utah 1991). While the trial court's findings of fact in divorce appeals are. reviewed under the "clearly erroneous standard," its conclusions of law "are reviewed for correctness and given no special deference on appeal." *Id. See also Bountiful v. Riley,* 784 P.2d 1174, 1175 (Utah 1989); *Smith v. Smith,* 793 P.2d 407, 409 (Utah App.1990).

## CORPORATE EXPENSES

■ Defendant first claims that the trial court erred in determining the amount of his gross income for purposes of establishing alimony and child support. He argues that the trial court misapplied Utah Code Ann. § 78-45-7.5(4)(a) (1992), in ruling that defendant's corporation's payments of principal on certain loans were not "necessary expenses required for self-employment or business operations," as contemplated by this provision, and must therefore be included in the computation of defendant's income from his company.

We do not agree that the trial court erred in its application of the statute's general language allowing deduction of "[o]nly those expenses necessary to allow the business to operate at reasonable level."[2] *Id.* First, defendant was in a position to manipulate the payments, since many were payments to himself and/or his father on loans with no specified payback period or procedure. Second, principal payments primarily serve to increase the company's value by decreasing its liabilities, and thus are not routine operating expenses. Finally, the trial court was best equipped to find whether those payments were necessary for the business's reasonable operation, given the specific requirements of defendant's particular business and the history of its operation.

swearing-in as a member of the Utah Supreme Court.

2. We reject the suggestion that the statute is so clear and unambiguous that the allocation of particular expenses can be dealt with as a matter

of law. The deductibility of particular expenses poses a question of fact, turning on whether such expenses are necessary, and, if so, whether or not they exceed those required for the business's operation at a reasonable level.

■ As to plaintiff's cross-appeal, it follows that we cannot conclude that the trial court erred in finding that cash outlays for the purchase of certain corporate assets were reasonably necessary, and therefore deductible. Again, the trial court is in the best position to judge the nature of such expenses against the history of this particular corporation. In light of the foregoing, as well as the fact that there was expert testimony supporting both plaintiff's and defendant's position, we cannot conclude that the trial court erred in its application of section 78–45–7.5(4)(a).

## EXCESSIVE ALIMONY

■ Defendant next argues that the trial court abused its discretion in awarding plaintiff more in alimony and child support than her own projected expenses necessitated. According to the Utah Supreme Court, in a case, like the instant one, where it was the award of alimony to a wife that was at issue, " 'the most important function of alimony is to provide support for the wife as nearly as possible at the standard of living she enjoyed during marriage, and to prevent the wife from becoming a public charge.' " *Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985) (quoting *English v. English*, 565 P.2d 409, 411 (Utah 1977)). "With this purpose in mind," the Supreme Court has articulated "three factors that must be considered in fixing a reasonable alimony award." *Id.* Those factors are:

■ the financial conditions and needs of the wife;

■ the ability of the wife to produce a sufficient income for herself; and

■ the ability of the husband to provide support.

*Id.* (quoting *English*, 565 P.2d at 411–12).

■ In this case, the trial court awarded plaintiff $1,431.76 in child support and $1,750.00 in permanent alimony for a total monthly payment of $3,181.76. Plaintiff testified that during the parties' marriage defendant regularly drew $2,000 a month from the dairy, which he gave to her to run the household. In contrast, plaintiff estimated her overall monthly expenses after the divorce would be $3,080.[3] However, the trial court noted that $600 of plaintiff's estimated expenses should be deleted, because she was given the family home free and clear of any mortgage, obviating the need for mortgage or rental payments and resulting in the lesser monthly expense amount of $2480. Given this adjustment, the trial court apparently awarded plaintiff $701.76 per month more than her projected financial requirements.[4] Where the trial court has offered no explanation for such a discrepancy, we agree with defendant that the court should not have awarded plaintiff more than her established needs required, regardless of defendant's ability to pay this excess amount. Accordingly, we remand the case for a reassessment of the alimony award in accordance with the precept that the spouse's demonstrated need must, under *Jones*, constitute the maximum permissible alimony award.

## GIFT OF SEPARATE PROPERTY

■ Defendant's third claim is that the trial court abused its discretion in concluding that the gift of approximately $175,000 he received from his father should be included in the equity of the dairy. According to the Utah Supreme Court, trial courts should

generally award property acquired by one spouse by gift and inheritance during the marriage (or property acquired in exchange thereof) to that spouse, together with any appreciation or enhancement of its value, unless (1) the other spouse has by his or her efforts or expense contribut-

---

3. Plaintiff listed her current monthly expenses as $2,035, and her projected monthly expenses as $3,080. The difference between the two figures resulted from a listed monthly increase in rent/mortgage payment from $0 to $600, utilities from $200 to $300, medical from $100 to $125, entertainment from $50 to $100, auto expenses from $150 to $200, and an additional $200 a month so that plaintiff could become recertified as a teacher. While it is not clear from the record why some of plaintiff's projected expenses would necessarily exceed her current expenses, we note that this projected amount was still less than the total monthly support finally awarded.

4. In fact, even with her initial $3,080 estimate, plaintiff only requested $1500 in alimony, in contrast to the $1750 which she was finally awarded.

ed to the enhancement, maintenance, or protection of that property, thereby acquiring an equitable interest in it, or (2) the property has been consumed or its identity lost through commingling or exchanges or where the acquiring spouse has made a gift of an interest therein to the other spouse.

*Mortensen v. Mortensen*, 760 P.2d 304, 308 (Utah 1988) (citation omitted). Plaintiff does not dispute that the $175,000 was a gift from defendant's father to defendant, or that defendant thereafter loaned the money to his corporation. Plaintiff's only claim is that by lending the money to the dairy in which she is deemed to have an interest, the money was effectively commingled. However, plaintiff confuses her interest in the dairy's *equity* with an interest in money loaned to the dairy. Since the money retained its nature as an identifiable gift of separate property even after defendant loaned it to the corporation, it should not be valued as part of the dairy's equity.

While we agree that the trial court erred in its logic, the error did not affect its proper distribution of the marital property. After receiving the $175,000 gift, defendant in turn loaned the money to Bingham Dairy, Inc., in order to purchase the dairy property. Apparently, Bingham Dairy has since repaid all but $79,038 of the loan. The trial court *included* the $79,038 figure in its calculation of the corporation's total liabilities of $369,648, which were then subtracted from its total worth of $590,980, to reach the company's net equity of $221,332. The court divided this equity equally, crediting plaintiff with $110,666, from which the court then subtracted defendant's share of the home equity in the amount of $37,500, finally reaching plaintiff's property award of $73,166. Thus, while the trial court erred in concluding that the $175,000 gift should not be subtracted from the company's worth, the court actually accounted for the portion of the loan which remained an obligation of the corporation in its equity calculation. Accordingly, we affirm the trial court's property distribution awarding plaintiff $73,166.

## FEED INVENTORY

■ Defendant's final argument is that the trial court erred in including the dairy's feed inventory in calculating the amount of divisible equity, in that the inventory's value was allegedly already valued with the dairy as a whole. However, contrary to defendant's assertion, the parties' expert appraiser valued all elements of Bingham Dairy, Inc. separately—the dairy buildings and equipment, farm land, livestock, feed inventory, and farm equipment. Thus, the dairy was not valued as a going concern. While defendant might have a valid point if a different valuation methodology had been employed, his argument that the feed inventory value was unnaturally high because it was measured just before winter is without merit in this case. Accordingly, we affirm the trial court's decision to include the inventory's value in its equity calculations.

## ATTORNEY FEES

■ Plaintiff cross-appeals the court's order requiring each party to pay its own attorney fees and costs. In light of plaintiff's substantial property and alimony awards as initially entered, we could not agree that the trial court abused its discretion in denying plaintiff an award of attorney's fees and costs, had its decree been preserved intact. However, given the trial court's need to reassess the alimony amount on remand, it should also have the opportunity to reassess plaintiff's need for defendant's help in the payment of attorney fees and costs, in the event that her alimony award is significantly reduced. Intimating no opinion on the ultimate resolution of the attorney fee question, we remand it for that limited purpose.

## CONCLUSION

We affirm the trial court's property distribution and child support award. While affirming the court's decision to award alimony, we remand for a reassessment of the amount. We also remand for a determination whether, in light of a modified alimony award, the order requiring each party to pay

its own attorney fees and costs is still appropriate.

GREENWOOD and RUSSON, JJ., concur.